**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 5th day of August, 2015.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**ASSET RESOLUTION CORP.,**                                        **Case No. 12-22932**
**Debtor.**                                                                          **Chapter 7**
_____

**MEMORANDUM OPINION AND ORDER DENYING TRUSTEE'S
PROPOSED SETTLEMENT AGREEMENT AND PERMANENT INJUNCTION AND
ORDER TO SHOW CAUSE WHY ABANDONMENT OR DISMISSAL
IS NOT APPROPRIATE**

The chapter 7 Trustee (the "Trustee") moves for approval of an intended compromise and entry of a permanent injunction under Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a).[1] Everlast

---

[1] Doc. 177. All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532, unless otherwise specifically noted. Trustee, Eric C. Rajala, appears in person. Combat Brands LLC, Exemplar Holdings, and Greg Orman appear by their attorney, Mark A. Shaiken. Everlast World's Boxing Headquarters Corporation appears by its attorneys, Alan M. Feld and Jed R. Schlacter.

*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*

World's Boxing Headquarters Corporation ("Everlast") opposes the motion.[2] The Court, having reviewed the pleadings and counsels' arguments, denies the Trustee's motion.[3] The Trustee's proposed settlement is not be approved because: (a) the Trustee's conclusions lack a factual and legal basis; (b) the settlement represents a trivial monetary recovery that provides either a minuscule or no distribution to general unsecured creditors; (c) in exchange for little or no recovery to estate creditors, the settlement enjoins unsecured creditors from asserting their claims; (d) the agreement is not fair and equitable and is not in the best interests of the estate or its creditors; and (e) the proposed agreement does not meet the requisite level of reasonableness. The Trustee essentially seeks to sell a third-party injunction—an injunction that in this case is inappropriate—to allow Combat Brands, LLC ("Combat") and Exemplar Holdings, LLC ("Exemplar") to effectively procure a release as to Everlast and other estate creditors.

Additionally, based on the history and status of this case, the Court directs the parties to show cause why abandonment of the claims or dismissal of this case is not appropriate.

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to decide the matter in controversy.[4] This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The pleadings do not contest the core nature of this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408.

---

[2] Doc. 182.

[3] This matter was submitted on the pleadings and counsel's arguments. Doc. 192.

[4] The District Court for the District of Kansas refers all cases and proceedings in, under, or related to title 11 to the District's bankruptcy judges pursuant to the Amended Standing Order of Reference, effective June 24, 2013, referenced in D. Kan. Rule 83.8.5.

**I. BACKGROUND**

This case was filed as a chapter 11 on October 29, 2012, and was subsequently converted to a chapter 7 case on May 7, 2013. Eric C. Rajala was appointed as the chapter 7 Trustee. An unsecured creditors committee was formed in the chapter 11 case on February 7, 2013.[5] On March 7, 2013, Vincent F. O'Flaherty, Attorney, LLC (O'Flaherty), was employed as attorney for the Official Unsecured Creditors Committee.[6] The Law Office of Eric C. Rajala was appointed as counsel for the Trustee on July 11, 2013.[7] Over the objection of certain parties, O'Flaherty was appointed as special counsel to the Trustee on August 21, 2013.[8] This employment, made on a contingency fee basis, was for O'Flaherty to investigate claims against third parties, including Ringside, Inc. ("Ringside"), Combat, and RAL, LLC ("RAL"). Following the investigation, O'Flaherty advised the Trustee that there were no viable claims upon which to proceed against these entities. An important facet of this investigation is that O'Flaherty's initial impression was that a defect existed in the perfection of security interests against the Debtor; however, subsequent disclosure revealed that O'Flaherty's time calculation with respect to perfection of the re-filing of a UCC-1 was erroneous. After this investigation, the Trustee reported to this Court at the hearing on April 17, 2015, that the estate did not have any credible claims against Ringside, Combat or RAL, and that these claims have a value of zero

---

[5] Doc. 47.

[6] Doc. 52.

[7] Doc. 109.

[8] Doc. 129.

dollars. Nevertheless, the Trustee filed a motion for approval of (1) an agreement pursuant to Federal Rule of Civil [sic] Procedure 9019 and (2) entry of a permanent injunction.[9] The intricacies of the motion and proposed settlement are discussed below. With the exception of Joseph Taylor's claim, Debtor's Schedule F does not list any unsecured, non-priority claims as contingent, unliquidated, or disputed. Everlast's claims are listed in three separate entries in the amounts of $163,238.86, $2,035.20, and $132,500.00, respectively. The general unsecured claims listed on Schedule F aggregate $3,821,111.30. Combat is listed on Schedule D in the amount of $857,491.08, with the value of the collateral and the unsecured portion of the debt listed as unknown.

## II.   FINDINGS OF FACTS

John Brown ("Brown") founded Ringside in 1977. Ringside manufactured and sold boxing equipment for several decades.

On February 4, 2009, Ringside and Everlast entered into a boxing products licensing agreement (the "Boxing Products Licensing Agreement"). Under this agreement, Ringside licensed the use of Everlast trademarks on licensed products and agreed to make royalty payments to Everlast.

On February 11, 2010, Ringside and Everlast entered into a website licensing agreement (the "Website Licensing Agreement"). Under this agreement, Ringside licensed the use of Everlast trademarks in catalogue and website sales and agreed to make royalty payments to Everlast.

---

[9] Doc. 177 filed January 6, 2015.

- 4 -

*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*

Case 12-22932   Doc# 196   Filed 08/05/15   Page 4 of 16

In late 2010 or early 2011, Brown hired Greg Orman ("Orman") of Exemplar, as Ringside's business consultant. Orman closely advised Brown and Ringside throughout 2011 while Ringside sought a purchaser or investor. Brown apprised Orman of possible investors and new owners to help sustain Ringside. Ringside's president at the time, Joe Taylor ("Taylor"), was in discussions with two possible suitors, Century Fitness, Inc. ("Century"), and Everlast, regarding an ownership position in Ringside.

By June 2011, Orman was directly involved in the negotiations with Century and indirectly, through Brown, in negotiations with Everlast. At Orman's behest, Brown terminated Taylor's employment with Ringside despite the fact that Taylor was in talks with possible investors during 2011. After Taylor's termination, Ringside did not have a representative actively managing negotiations with possible suitors and such negotiations collapsed.

In early 2012, Ringside faced default on its bank agreements and Brown proposed an investment of his personal funds. Orman counseled against such an investment and Ringside soon defaulted on multiple obligations.

On June 14, 2012, Everlast terminated the Boxing Products Licensing Agreement and the Website Licensing Agreement (the "Licensing Agreements") as a result of Ringside's breach for failure to pay Everlast amounts due under the Licensing Agreements.

On June 19, 2012, Everlast notified Ringside that Ringside could not continue selling licensed products. At this time, the value of Ringside's assets had dwindled and Ringside's bank moved to foreclose on Ringside's assets and other real estate owned by Brown. Two Ringside vendors filed collections actions, and Ringside faced a wrongful termination suit by Taylor.

On June 19, 2012, Orman formed Combat.

On June 21, 2012, Brown formed RAL.

Notably, both Combat and RAL were formed after Everlast terminated the Licensing Agreements on June 14, 2012.

On June 25, 2012, perhaps at a significant discount, Combat purchased the bulk of Ringside's assets including inventory, intellectual property, and the ringside.com website on which Everlast and other products were sold. As part of this transaction, Combat, RAL, and Ringside agreed that Ringside's intellectual property was worth only $50,000—and Combat allocated such amount of its total purchase price to Ringside's intellectual property. This was likely an unreasonably low and unrealistic valuation given Ringside's brand had been widely used in professional and amateur boxing for decades and the transferred assets included the Combat Sports brand—Ringside's most profitable product line that largely drove Ringside's revenues. One might conclude that the genesis of the unreasonably low valuation was that Orman, as an insider, effectively froze out other potential bidders from the sales process and orchestrated the entire transaction for his benefit. Everlast also asserted that Combat and RAL did not acquire the assets of Ringside in good faith or for reasonably equivalent value and that Combat continued selling licensed products in violation of the License Agreements and Everlast's trademarks.

On July 9, 2012, Everlast filed a complaint (the "Complaint") against Ringside, Combat, and RAL (together the "Defendants") in the United States District Court for the Southern District of New York, Case No. 12-cv-5297-PAE (the "Everlast Action"). The Complaint asserted the

following seven causes of action: (1) breach of contract against Ringside; (2) breach of contract against Combat and RAL; (3) trademark infringement against Defendants; (4) false designation of origin against Defendants; (5) trademark dilution against Defendants; (6) unjust enrichment against Defendants; and (7) a permanent injunction against Defendants.

On October 23, 2012, Ringside filed a voluntary bankruptcy petition as Asset Resolution Corp.[10] As a result of Ringside's bankruptcy, the claims in the Everlast Action against Ringside were stayed. Upon motion by Ringside, Combat, and RAL, the Everlast Action was transferred to the United States District Court for the District of Kansas.[11] Combat and RAL then moved to compel a stay of the Everlast Action.

On September 19, 2013, this Court determined that as of September 19, 2013, the claims against Combat and RAL for alter-ego, successor liability, and de facto merger belonged to the estate—subject to the Trustee's decision to pursue *or abandon* the claims to the creditors. This Court also directed that the remaining claims against Combat and RAL could proceed in the Kansas District Court Action.[12]

In December 2013, Everlast amended its Complaint, asserting claims against Brown and Orman individually and asserting new claims against Combat. The revised claims in Everlast's complaint were: (1) breach of contract (Combat); (2) trademark infringement (violation of

---

[10] Doc. 1 at 1. Asset Resolution Corp, FKA Ringside, Inc.

[11] *Everlast World's Boxing Headquarters Corporation v. Ringside, Inc. et al.*, United States District Court for the District of Kansas, Case No. 13-cv-02150.

[12] *Id.*

- 7 -
*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*

Lanham Act § 32) (Combat, RAL, Brown, and Orman); (3) false designation of origin, false description, and unfair competition (violation of Lanham Act § 43(a)) (Combat, RAL, Brown, and Orman); (4) federal trademark dilution (violation of Lanham Act § 43(c)) (Combat, RAL, Brown, and Orman); (5) unjust enrichment (Combat, RAL, Brown, and Orman); and (6) permanent injunction (Combat, RAL, Brown, and Orman).

On January 16, 2015, the Trustee filed a motion for intended compromise seeking approval of a proposed settlement (the "Agreement").[13]  The Agreement provides, in exchange for a $30,000 payment, a complete settlement of all claims the Trustee could make against Combat and Exemplar, et al. (the "Released Parties"),[14] and includes a sweeping third-party injunction which, among other things, would permanently enjoin estate creditors from pursuing their own claims.

On February 13, 2015, Everlast filed an objection requesting the Court deny the Trustee's motion for intended compromise.

**III.   LAW**

Under Fed. R. Bankr. P. 9019, this Court has the authority to approve a compromise or settlement on the trustee's motion.  Rule 9019 provides:

> (a) [ ] On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. . . .

---

[13] Doc. 177 and 177-1.

[14] Doc. 177-1 at 3, ¶ 7.

(b) [ ] After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.[15]

The Supreme Court directs a bankruptcy court to:

> . . . apprise[] [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.[16]

Most circuit courts also consider the interests of creditors and deference to their reasonable views on the matter.[17] Courts should approve a compromise "when it is both 'fair and equitable' and in the best interests of the estate."[18] The Court's "decision to approve the settlement . . . must be an informed one based upon an objective evaluation of developed facts."[19] Compromises are approved under Rule 9019(a) when the proposed settlement is both fair and equitable as well as in the best interest of the estate.[20] That determination must be

---

[15] FED. R. BANKR. P. 9019.

[16] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

[17] 10 COLLIER ON BANKRUPTCY ¶ 9019.02, at 9019-4. (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015).

[18] *Id.* at nn. 4 & 5 (citing *TMT*, 390 U.S. 414, 424, and *In re Doctors Hospital of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007).

[19] *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

[20] *TMT*, 390 U.S. at 424; *Matter of AWECO, Inc.*, 725 F.2d 293, 296 (5th Cir. 1984); *Martin v. Kane*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986).

supported by a sufficient factual foundation.[21]  The Trustee, as the party proposing the Agreement, carries the burden of persuading the Court that the Agreement is both fair and equitable and should be approved.[22]

IV.     ANALYSIS

A.      **The Agreement fails to meet Rule 9019 requirements because the Trustee's conclusions lack a factual and legal basis and the Agreement is not both fair and equitable and in the best interests of the estate.**

After a thorough investigation by his counsel, the Trustee asserts that he has no credible claims against Combat and Exemplar.[23]  The Trustee asserts that possible claims were investigated, but does not provide the specific facts uncovered and the legal basis leading to the conclusion that he has no credible claims to pursue.  However, this Court will take the Trustee at his word that following a thorough investigation, the estate does not have viable claims against the released parties.  The Trustee does not establish that the proposed settlement should be approved.  The Trustee provides insufficient information to establish that $30,000 is a fair exchange for releasing potential claims and issuing a third-party injunction against estate creditors.  The Trustee's motion must be denied because his assertions do not justify the terms of the settlement.

---

[21] *In re A & C Props.*, 784 F.2d at 1383.

[22] *Id*. at 1381.

[23] Doc. 177 at 3, ¶ 10.

*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*

Furthermore, the Trustee does not exercise proper deference to the reasonable views of estate creditors. The Trustee does not argue facts indicating that he considered the views of the creditors when developing the proposed settlement. The evidence indicates that Ringside, Combat, and RAL are being offered an extraordinary and inappropriate benefit in the form of a third-party injunction against estate creditors without the Trustee taking the views and interests of all estate creditors into consideration.

The proposed settlement is both unfair and inequitable and not in the best interests of the estate. The Trustee's admission that the claims are worthless reveals that the proposed Agreement is an effort to secure a trivial monetary recovery in exchange for broad third-party injunctive relief in favor of the settling parties. The Agreement cannot be approved.

**B.    The requested injunction is inappropriate under § 105 because it bars unpaid estate creditors from asserting their claims in exchange for little or no distribution**.

This Court must consider the reasonableness of a global settlement in light of each claim being resolved or released.[24] Here, the Agreement provides a windfall to Ringside, Combat, and RAL to the severe detriment of general unsecured creditors who hold aggregate claims in excess of $3 million. Ringside, Combat, and RAL would escape potential liability without any material compensation to the bankruptcy estate or unsecured creditors.

---

[24] FED. R. BANKR. P. 9019; *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011).

The Trustee asserts that the purpose of the Agreement is "to provide the Trustee with funds to pay some of the administrative expenses of the Ringside bankruptcy estate, to bring a conclusion to the Investigation, to preserve the Bankruptcy Court's ruling in the Everlast Order, and to assure that no frivolous suits are brought by any creditor or party in interest against the Combat Parties [Combat and Exemplar] with respect to any of the Claims."[25] The Agreement also states that, "all creditors and parties in interest are enjoined from pursuing . . . Claims against the Released Parties . . . ."[26]

The Trustee relies on *In re Madoff*[27] for authority to approve the Agreement and issue third-party injunctions under § 105.[28] However, the *Madoff* court acknowledged that the release of non-debtor claims was under "truly unusual circumstances" that justified the release because the "estate received substantial consideration."[29] Additionally, the outcome reached in *Madoff* is

---

[25] Doc. 177 at 3, ¶ 11. In this case, the last goal is neither a concern of the Trustee nor a factor. This is not a case in which millions of dollars are recovered for unsecured claimants—it is in fact the antithesis of such a case.

[26] Doc. 177-1 at 3, ¶ 3.

[27] *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012).

[28] Doc. 177 at 6, ¶ 24–29.

[29] 848 F. Supp. 2d at 491. In *Madoff*, there have been significant recoveries and distributions to unsecured claimants. The bankruptcy trustee in *Madoff* has recovered or negotiated settlements of more than $10.7 billion, and he has made creditor distributions of $7.6 billion. *See* Bill Rochelle, "*Madoff Trustee's High Court Rebuff May Cut Victim Recoveries,*" BLOOMBERG BUSINESS (June 22, 2015), http://www.bloomberg.com/news/articles/2015-06-22/madoff-trustee-s-high-court-rebuff-may-cut-victim-recoveries.

not without its critics.[30] Here, a substantial recovery for creditors is not part of the Trustee's Agreement. The proposed $30,000 payment would only fund administrative expenses and provide little or nothing for estate creditors.[31] Thus, the Trustee's reliance on *Madoff* is misplaced because the estate does not receive substantial consideration, and creditors will receive little, if any, distributions from the estate.

The requested injunction is unreasonable because: (a) creditors receive no economic recovery or other tangible benefit; (b) the Trustee did not consult with creditors or consider their views before proposing to extinguish their rights against Combat and Exemplar; (c) the Trustee effectively abandons the claims[32] against Combat and Exemplar in exchange for a trivial settlement to fund administrative expenses; (d) the settlement is not fair and equitable and is not in the best interest of the estate or creditors thereof; and (e) the settlement is not a true benefit to the estate because the Debtor is not reorganizing and has few, if any, assets of value. The Agreement is an effort to settle what the Trustee concludes are worthless claims in conjunction

---

[30] *See* Eammon O'Hagan, *On a "Related" Point: Rethinking Whether Bankruptcy Courts Can "Order" the Involuntary Release of Non-Debtor, Third-Party Claims*, 23 AMER. BANKR. INST. L.R. 531 (2015), questioning the propriety of such releases by a bankruptcy court. *See also* Eric W. Anderson & Jay Basham, *Please Release Me, Let Me Go*, AM. BANKR. INST. J., June 2015, at 20 ("Neither § 105(a), nor any other Code provision, expressly authorizes non-consensual, non-debtor releases."). The Court's jurisdiction to enter such injunctions may be broader in chapter 11 reorganization cases than in chapter 7 cases, a distinction not touched upon by the parties. 1 COLLIER ON BANKRUPTCY ¶ 3.01[3][e], at 3-18 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015).

[31] To clarify his pleadings, at oral argument, the Trustee indicated that not all of the $30,000 would be consumed by administrative expenses.

[32] *Infra* III.C.

- 13 -

with a broad § 105(a) injunction to protect Ringside, Combat, and RAL—an outcome that the Court will not approve. A § 105(a) injunction issued against estate creditors for the benefit of a third-party litigant is not an asset of this bankruptcy estate to be sold, but that is in effect what the Trustee seeks.

**C.     Abandonment and Case Dismissal**

Abandonment under § 554 is the proper course when property is of inconsequential value to the estate. Section 554 allows the Court to order the Trustee to abandon estate property that is burdensome or of inconsequential value after notice and hearing. The factual determination is within the Court's discretion.[33] Abandonment is appropriate when there is no concrete evidence of value to the estate.[34]

The Trustee indicated that: (a) he engaged O'Flaherty on a contingency fee basis to investigate numerous theories of recovery against Combat; (b) Combat fully complied with the Trustee's discovery requests; and (c) he "determined that he had no credible [c]laims he could pursue" against Combat.[35] The Trustee's investigation is concluded and the Trustee determined that the estate does not have credible claims to pursue against Ringside, Combat or RAL.[36] It

---

[33] *In re Nelson*, 251 B.R. 857, 859 (B.A.P. 8th Cir. 2000).

[34] *See, e.g., id.* at 861; *In re Thornton*, 269 B.R. 682, 685 (Bankr. W.D. Mo. 2001).

[35] Doc. 177 at 3–9, ¶ 5, 7, and 10.

[36] Doc. 177 at 2 and 3.

appears that Asset Resolution is employing the instant bankruptcy case as a litigation tactic to delay adjudication in the Kansas District Court action,[37] for the benefit of not only the Debtor, but also for Ringside, Combat, and RAL. Under the proposed Agreement, the cost for these benefits is a $30,000 settlement for a § 105(a) injunction, the latter of which is not an asset of the bankruptcy estate that can be sold.

This Court previously ruled that the alter ego, successor liability, and de facto merger theories asserted against Combat and RAL were subject to the automatic stay.[38] That ruling limited the stay to the Trustee's claims. That order protected the Trustee's pursuit of those claims while the Trustee actively investigated them. The Court did not preclude the possibility that individual creditors could pursue these claims if the Trustee decided not to pursue them, or if they were abandoned. Therefore, the Court orders the Trustee and parties-in-interest to show cause why these claims the Trustee now asserts are valueless should not be abandoned or this bankruptcy case dismissed. The Trustee has admitted that he has nothing to pursue.[39] Section 105(a) third-party injunctions are not for sale and will be issued only in the rare circumstance that there is an extraordinary benefit to the estate and unsecured claimants.

---

[37] *Supra* note 11.

[38] Doc. 141.

[39] At oral argument on April 17, 2015.

*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*

## V. CONCLUSION

**IT IS ORDERED** that the Trustee's Motion and proposed settlement are DENIED.

**IT IS FURTHER ORDERED** that the Trustee and settling creditors SHOW CAUSE by written response due within 20 days of this order why the claims against Debtor should not be abandoned under § 554 or the instant case dismissed for cause under § 707(a). Everlast and other parties-in-interest shall file a response to the aforementioned Show Cause Order responses thereto within 40 days of this order. This Court may, in its discretion, set any response to this Order to Show Cause for hearing.

**IT IS FURTHER ORDERED** that Combat's Objection to Claim No. 33 of Everlast is continued subject to call as the objection is premature due to denial of the Trustee's Rule 9019 Motion[40] and this Court's order to show cause why abandonment of the claims or dismissal of this case is not appropriate.[41]

**IT IS SO ORDERED**.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[40] Doc. 177.

[41] *Supra* III.C.

*15.08.05 Asset Resolution Corp Order Denying 9019 Agreement and Injunction.wpd*